UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK EDWARD BLACKMON, II,

        Petitioner,

v.                                                   Case Number: 2:11-CV-12823

STEVEN RIVARD,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DENYING CERTIFICATE OF APPEALABILITY**

Petitioner Mark Blackmon, II, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his convictions for second-degree murder, Mich. Comp. Laws § 750.317, conspiracy to commit armed robbery, *id.* § 750.157a, and use of a firearm during the commission of a felony, *id.* § 750.227b. He argues that his guilty plea was involuntary and would not have been entered but for his youth, his inexperience, and the incomplete information given to him by his appointed counsel. In addition, Petitioner argues that he was deprived of his Sixth Amendment right to self representation when the trial court denied his request, made during his sentencing hearing, to discharge his attorney and to represent himself. Respondent argues that both of these claims lack merit. For the reasons set forth, the court will deny the petition.

## I  BACKGROUND

The court adopts the statement of facts set forth by the Washtenaw County Circuit Court, which are presumed correct on habeas review. *See* 28 U.S.C.

§ 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009). Those facts are as follows:

> Defendant, along with Harry Pittman, Andrew Lyles, Eric Kuish and Seon Pringle, decided to rob marijuana dealer Leo Weathers. They met Weathers at the Schooner Cove apartment complex, on February 19, 2006, and when Weathers got out of his car and approached defendant and his companions, who were also sitting in a car, Kuish shot and killed Weathers. There was an altercation in which defendant was struck by the car Weathers had been in, and was then held by one man while another was punching him. Defendant was taken to the emergency room.
>
> While he was in the emergency department, in bed with IVs in his arm, a detective interviewed him. Defendant was unable to sign his Miranda waiver at that time. He was pretty incoherent, conscious but nodding out occasionally; an hour later, he was coherent, according to the detective.
>
> When interviewed again on February 21, 2006, defendant told the detective that he was on Vicodin. A gunpowder residue test was performed without defendants consent. During another interview, the detective played a recording of defendants girlfriend, telling him to tell the truth so things would go better, and that she loved him. Defendant did not have counsel for any of these interviews.
>
> Defendant was charged with first degree felony murder (Count I); assault with intent to rob while armed (Count II); conspiracy to rob while armed (Count III) felony firearm (Count IV); possession of a short-barreled shotgun (Count V); possession of a loaded firearm in a vehicle (Count VI); and open murder (Count VII). After extended negotiations with the prosecutor and discussion with his own attorney, defendant pled guilty, pursuant to a plea bargain with the prosecutor, to Counts III, IV and an added charge of second degree murder (Count VIII). The plea agreement defendant signed provided, inter alia, Mark Edward Blackmon II acknowledges and agrees that he waives or forfeits any right to object to the Prosecutors exclusive right to set aside the plea agreement . . . [.]"
>
> Defendant tried to withdraw his plea prior to sentencing. First, he made the request in a letter to the court, mailing the letter to his friend Harry Pittman to forward to the court. The letter, however, was intercepted by the jail and given to the prosecutor, who did not immediately bring it up before Judge Morris. Defendant then eventually asked his counsel to file a motion to withdraw his plea. In the motion, defendant raised, as one basis for his request, that he had not complied with the terms of the plea agreement: he refused to testify. The Court denied defendants motion at a hearing on

> August 11, 2008, based on the language in the plea agreement that only the prosecutor had the right to set it aside, the Court denied defendants request to withdraw his plea.
>
> Defendant was sentenced on October 20, 2008. Before the sentence was pronounced [sic], defendant requested new counsel and attempted to fire his trial attorney. The Court responded: "I'm not listening to you because you have an attorney here representing you, so would you let him finish? And if you want to fire him, you do it in a separate proceeding. Thank you." When defendant objected, asking how he was going tp do that given that he was on his way to prison, the Court replied, "Just listen to your attorney right now. Go ahead, Mr. Roberts." The Court denied his request for new counsel, did not permit defense counsel to withdraw and proceeded with sentencing. Defendant was sentenced to terms of 18 years, 9 months, to 29 years, and 28 to 42 years, consecutive to 2 years for the felony firearm.

(Opinion and Order Denying Def.'s Mot. to Withdraw Plea, *People v. Blackmon*, No. CRW 06-341 FC (Washtenaw Cnty. Cir. Ct. Sept. 23, 2009), Dkt. # 9-7 at 154-55.)

Following sentencing, Petitioner filed a motion to withdraw his guilty plea, correct his sentence, and grant an evidentiary hearing. The trial court denied that motion. (*Id.* at 167.) Petitioner then filed a delayed application for leave to appeal in the Michigan Court of Appeals. He raised the following three claims:

   I.  Defendant is entitled to plea withdrawal because his plea was the result of fear and was not, therefore, freely given and voluntary.

   II. The trial court did not make an appropriate inquiry into defendant's request to "fire" his attorney, thus depriving defendant of his Sixth Amendment right to counsel at sentencing, and violating Defendant's constitutional due process rights at sentencing.

   III. Defendant's plea and sentence on felony firearm is incorrect; it is legally and factually impossible for felony firearm to enhance a conspiracy conviction, so there is an insufficient basis for the conviction. This error is in violation of Michigan law and Defendant's constitutional due process protections at sentencing.

(Delayed Application for Leave to Appeal to the Mich. Ct. App., Dkt. # 9-7 at 4.) In a single sentence order, the Michigan Court of Appeals denied leave to appeal for lack of

merit on the grounds presented. (Order Denying Delayed Application for Leave to Appeal, *People v. Blackmon*, No. 29472 (Mich. Ct. App., Dec. 2, 2009), Dkt. # 9-7 at 1.)

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court. He raised the same three claims he brought in the court of appeals plus an additional fourth claim: "Defendant is entitled to a remand to develop the question of whether his statement was suppressed." (Application for Leave to Appeal to the Mich. Sup. Ct., Dkt. # 9-8 at 4.) The Michigan Supreme Court also denied leave to appeal. (Order Denying Application for Leave to Appeal, *People v. Blackmon*, No. 140450 (Mich. Sup. Ct. June 28, 2010), Dkt. 9-8 at 1.)

Petitioner then filed the instant habeas corpus petition, raising the following two claims, both of which were presented to the state courts:

> I. Defendant is entitled to plea withdrawal because his plea was the result of fear and was not, therefore, freely given and voluntary.
>
> II. The trial court did not make an appropriate inquiry into defendant's request to "fire" his attorney, thus depriving defendant of his Sixth Amendment right to counsel at sentencing, and violating Defendant's constitutional due process rights at sentencing.

## II. STANDARD

Federal law imposes the following standard of review for habeas cases challenging state court convictions:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [United States Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "[T]he state court's decision must have been more than incorrect or erroneous. "The state court's application must have been "'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citation omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, __ U.S. __, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)); *see also Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct.

5

770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court" (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam))); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so

6

long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's ruling. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011). A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### III. DISCUSSION

#### A. Voluntariness of Plea

Petitioner argues that his guilty plea was involuntary because he was young, inexperienced, and not fully informed by counsel concerning the implications of his plea.

To be valid, a guilty plea must be made voluntarily and intelligently "with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748-49 (1970). A "plea of guilty entered by one fully aware of the direct consequences" of the plea is voluntary in a constitutional sense, and the mere fact that the defendant "did not correctly assess every relevant factor entering into his decision" does not mean that the decision was not intelligent. *Id.* at 755, 757. The

voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749.

The Washtenaw County Circuit Court addressed Petitioner's argument when it denied his motion to withdraw his plea. The court concluded that, although young, Petitioner understood the terms of his plea agreement, was competent when pleading, and was sufficiently informed to make an intelligent decision. (Opinion and Order Denying Def.'s Mot. to Withdraw Plea, *People v. Blackmon*, No. CRW 06-341 FC (Washtenaw Cnty. Cir. Ct. Sept. 23, 2009), Dkt. # 9-7 at 162-63.) Petitioner's true motivation for withdrawing his plea, the court found, was that he was "unhappy with the agreement he made." (*Id.*) The court concluded that such unhappiness provided no legally acceptable reason to justify granting Petitioner's motion. (*Id.* at 164.) The Michigan Court of Appeals and the Michigan Supreme Court subsequently denied Petitioner's applications for leave to appeal his guilty plea for lack of merit, but neither court explained its reasoning. However, even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S.Ct. at 784. In the instant case, Petitioner fails to make this showing.

When responding to a habeas corpus challenge, the state "generally satisfies its burden by producing a transcript of the state court proceeding." *Garcia v. Johnson*, 991 F.2d 324, 326 ( 6th Cir. 1993). The plea transcript provided here makes clear that Petitioner was alert and competent while pleading, (Plea Hr'g Tr., 6:19-23, Feb. 28, 2007, Dkt. # 9-4), that he understood what rights he was giving up by accepting the plea bargain, (*id.* at 9:7-10:2), that he understood the maximum penalties he faced by

8

pleading guilty (*id.* at 8:1-24), and that he had been fully informed of his options by his attorney. In other words, the colloquy substantiates the trial court's findings. Petitioner's "[s]olemn declarations in open court" that his plea was freely, understandingly, and voluntarily made, "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). In light of the plea transcript, "the [P]etitioner must overcome a heavy burden if this court is to overturn state court findings." *Id.* at 328.

Petitioner's assertions that he was young, inexperienced, and uninformed do not overcome the "heavy burden" established by the plea colloquy. If this court were to grant habeas corpus relying solely on Petitioner's claim that, in retrospect, if he knew when he was offered the plea bargain what he knows now, he would not have pled guilty, the court "would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy . . . indicating the opposite." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir.1999).

Having reviewed the record, the court concludes that neither the state trial court in denying Petitioner's motion to withdraw his guilty plea nor the Michigan Court of Appeals' or Michigan Supreme Court's orders denying leave to appeal were contrary to or involved an unreasonable application of clearly establish federal law.

### B. Right to Self Representation

Petitioner next argues that his Sixth Amendment right to self representation and his due process rights were violated when the state trial court denied his request, made during sentencing, to fire his attorney and represent himself.

Although criminal defendants have a Sixth Amendment right to self representation, *see Faretta v. California*, 422 U.S. 806 (1975),"[t]he right . . . is not absolute," *Martinez v. Ct. of Appeal of Cal.*, 528 U.S. 152, 162 (2000). "The defendant must 'voluntarily and intelligently' elect to conduct his own defense, and most courts require him to do so in a timely manner." *Id.* at 161-62 (quoting *Faretta*, 422 U.S. at 835) (citations omitted); *United States v. Martin*, 25 F.3d 293, 295 (6th Cir. 1994) ("Even where the right to self-representation is clearly invoked, it must be done so in a timely manner, and courts will balance any such assertion against considerations of judicial delay." (footnote omitted)). Moreover, "the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Martin*, 528 U.S. at 162.

Petitioner's request to fire his attorney and represent himself, made during his sentencing hearing, was untimely. Petitioner made his request on October 20, 2008, approximately twenty months after he entered into his plea agreement. The record is devoid of any evidence suggesting that Petitioner, during the intervening months, expressed dissatisfaction with his trial counsel or attempted to fire his attorney and represent himself. It was not until midway through the sentencing hearing that Petitioner decided he was better off without his counsel. But by this time, there was nothing left to decide. Petitioner had already pled guilty, the court had already denied his attempt to withdraw his plea, and his sentence had already been set as part of his

plea deal.

On these facts, the trial court's denial of Petitioner's request is not constitutionally suspect. In *Robards v. Rees*, 789 F.2d 379 (6th Cir. 1986), the Sixth Circuit held that the trial court did not abuse its discretion when it denied a defendant's untimely request to represent himself made on the day his trial began. 789 F.2d at 383. The court observed,

> Had the request been granted, the trial judge would have been obliged to postpone the commencement of the trial for an extended period of time in order to allow [the defendant] a sufficient amount of time to prepare his defense. It was within the discretion of the trial judge to deny [the defendant's] request. His denial was not an abuse of discretion. Moreover, this Court believes that this denial by the state court was not tantamount to a constitutional violation.

*Id.* Here, Petitioner's request was made significantly later than the defendant's request in *Robards*. The trial court was only moments away from announcing Petitioner's sentence, which had already been agreed to by Petitioner and the prosecutor. Granting his request would have required the trial court to postpone Petitioner's sentencing, even though the sentence had been established through a plea agreement. The State's interest in the fair and efficient administration of justice outweighed Petitioner's eleventh hour request to represent himself. Accordingly, the trial court did not abuse its discretion in denying his request. Nor were the Michigan Court of Appeal's or Michigan Supreme Court's orders denying leave to appeal contrary to or an unreasonable application of clearly established federal law.

Petitioner also contends that the trial court's summary denial of his request, alone, violated his right to self representation guaranteed by the Sixth Amendment.

Specifically, he argues that the trial court should have engaged in a more detailed and considered determination of whether he should be permitted to represent himself at sentencing. (Pet. Writ Habeas Corpus, Dkt. # 1 at 29-30 ).  Petitioner, however, fails to establish that any clearly established federal law, as interpreted by the Supreme Court, required the trial court to undertake the type of evidentiary hearing Petitioner seeks before denying his request to represent himself.  Moreover, in *Robards*, the Sixth Circuit held that a state court's summary denial of the defendant's untimely request to represent himself did not amount to a constitutional violation.  789 F.2d at 384.  In light of the holding in *Robards* and the absence of Supreme Court precedent supporting Petitioner's claim that the trial court failed to engage in an adequately detailed examination of his request, the court finds that Petitioner has not established that the trial court's denial of his request was violative of his Sixth Amendment right to self representation.  The Michigan Court of Appeal's and Michigan Supreme Court's orders denying leave to appeal are necessarily not contrary to or unreasonable applications of federal law.

### IV.  CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner

satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the court must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37. Having considered the matter, the court concludes that Petitioner has not made a substantial showing of the denial of a constitutional rights as to his habeas claims.

## V. CONCLUSION

For the reasons stated above, IT IS ORDERED that Petitioner's petition for a writ of habeas corpus [Dkt. # 1] is DENIED and DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

      s/Robert H. Cleland
      ROBERT H. CLELAND
      UNITED STATES DISTRICT JUDGE

Dated: August 17, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 17, 2012, by electronic and/or ordinary mail.

      s/Lisa Wagner
      Case Manager and Deputy Clerk
      (313) 234-5522